******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* JERMAINE LEWIS (AC 48094)

Alvord, Moll and Seeley, Js.

*Syllabus*

The defendant, who had been on probation as a result of a prior criminal conviction, appealed from the trial court's judgment revoking his probation and imposing a sentence of incarceration. The defendant claimed that he was deprived of his due process right to testify in the violation of probation proceeding because his waiver of that right was not made knowingly, intelligently and voluntarily. *Held*:

The defendant's waiver of his constitutional right to testify was made in violation of his right to due process, as the record did not provide this court with sufficient assurance that the waiver was made knowingly, intelligently and voluntarily, defense counsel having made no representations to the court about the defendant's decision not to testify, the court did not so inquire of the defendant or of counsel, and the record was devoid of any indication that counsel had discussions with the defendant regarding his right to testify and the waiver of that right, and, as the state failed to demonstrate that the violation was not harmless beyond a reasonable doubt, the judgment was reversed and the case was remanded for a new violation of probation hearing.

This court rejected the state's contention that a defendant's constitutional right to testify in a violation of probation proceeding is not equivalent to that of a defendant in a criminal trial and concluded that defendants in violation of probation proceedings enjoy a constitutional right to testify that is equal to that of defendants in criminal trials.

This court, in concluding that a defendant's waiver of the constitutional right to testify in a violation of probation proceeding must comport with due process, could discern no compelling reason why the determination in *State* v. *Morel-Vargas* (343 Conn. 247) that a defendant's waiver of the right to testify in a criminal trial must be made knowingly, intelligently and voluntarily should not apply with equal force in a violation of probation proceeding.

This court concluded that a constitutionally valid waiver of a defendant's right to testify in a violation of probation proceeding requires a showing of sufficient assurance, based on the totality of the record, that the defendant's waiver was made knowingly, intelligently and voluntarily, and, although a court is not required to canvass a defendant or to inquire of defense counsel whether the defendant has been adequately advised prior to the waiver, the most prudent approach for trial courts would be to canvass defendants regarding a waiver of the right to testify.

Argued March 16—officially released July 7, 2026

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Waterbury and transferred to the judicial district of New Haven, geographical area number seven at Meriden, where the case was tried to the court, *Zagaja, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Reversed*; *further proceedings*.

*Erica A. Barber*, assistant public defender, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Nichol Peco*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Jermaine Lewis, appeals from the judgment of the trial court finding him in violation of, and revoking, his probation pursuant to General Statutes (Rev. to 2023) § 53a-32.[1] On appeal, the defendant claims, for the first time, that he was deprived of his due process right to testify in the violation of probation proceeding because the record does not show that

[1] General Statutes (Rev. to 2023) § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . .

"(c) Upon notification by the probation officer of the arrest of the defendant or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf. Unless good cause is shown, a charge of violation of any of the conditions of probation or conditional discharge shall be disposed of or scheduled for

his waiver of that right was knowing and voluntary. In support of his claim that his waiver of his right to testify was not constitutionally valid, the defendant relies on the decision from our Supreme Court in *State* v. *Morel-Vargas*, 343 Conn. 247, 254, 273 A.3d 661, cert. denied,        U.S.      , 143 S. Ct. 263, 214 L. Ed. 2d 114 (2022), in which the court addressed the issue of what is constitutionally required to demonstrate that a defendant in a criminal trial knowingly, voluntarily, and intelligently waived his right to testify on his own behalf. Specifically, in *Morel-Vargas*, the court held that, although "a trial court is not constitutionally required to obtain an *on-the-record* waiver from the criminal defendant, himself"; (emphasis added) id., 263–64; "the totality of the record [must furnish] sufficient assurance of a constitutionally valid waiver of the right to [testify]." (Internal quotation marks omitted.) Id., 260. Our Supreme Court in *Morel-Vargas* exercised its "supervisory authority prospectively to require a trial court, when presiding *over a criminal trial*, to either canvass the defendant prior to his waiver of his right to testify or, alternatively, to inquire of defense counsel directly to determine whether counsel has adequately advised the defendant regarding the waiver of his right to testify." (Emphasis added.) Id., 270. The primary question we must decide in this

a hearing not later than one hundred twenty days after the defendant is arraigned on such charge.

"(d) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

In this opinion, our references to § 53a-32 are to the 2023 revision of the statute.

appeal is whether, in light of *Morel-Vargas*, which was decided in the context of a criminal trial, a defendant's waiver of his right to testify in a violation of probation proceeding also must be knowing, intelligent, and voluntary for the waiver to be constitutionally valid. We answer that question in the affirmative, and because the record in this case is not sufficient to establish that the defendant's waiver of his right to testify was knowing, intelligent, and voluntary, we reverse the judgment of the court and remand the case for a new violation of probation hearing.

The following facts and procedural history are relevant to our resolution of this appeal. On January 22, 2021, the defendant entered a guilty plea to assault in the first degree in violation of General Statutes § 53a-59 (a) (3), for which he subsequently was sentenced to ten years of incarceration, execution suspended after five years, followed by five years of probation.[2] On December 15, 2022, the defendant began serving his probation and signed a conditions of probation form, which included, inter alia, the standard condition that he not violate any criminal laws. Subsequently, on April 30, 2023, the defendant's probation officer, Charles Santiago, was informed by the Meriden police that the defendant had been arrested for risk of injury to a child.[3] The charge stemmed from conduct of the defendant that took place on April 30, 2023, involving a fifteen year old girl, H.[4] The defendant had been visiting the home of V, a close friend, and V's then fourteen year old son, A, who was dating H at the time. During that visit, at which time the defendant, V, A, and H were all present in V's home, the defendant allegedly

[2] The defendant's conduct underlying the assault charge occurred on or about December 29, 2017, and the defendant was arrested in 2018.

[3] The defendant initially had been charged with risk of injury to a child and sexual assault in the fourth degree, but the information subsequently was amended to include only the charge of risk of injury to a child.

[4] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sent sexually explicit text messages to H,[5] exposed his penis to H, and asked H if she would perform fellatio on and "fondle" A's penis, stating that he would pay H if she did so. As a result of the defendant's arrest, Santiago submitted a warrant for the defendant's arrest for violation of the condition of his probation that he not violate any criminal laws.

On June 7, 2024, the court, *Zagaja, J.*, held a hearing on the violation of probation charge. The state presented testimony from Santiago and Officer Raeshaun Finney of the Meriden Police Department, who had responded to a 911 call regarding the April 30, 2023, incident and testified regarding the statements made to him by H about what had transpired. The court also admitted into evidence, without objection, exhibits offered by the state, which included a certified copy of the defendant's 2021 conviction, the defendant's signed conditions of probation form, and photographs of the text messages sent by the defendant to H.

After the state rested its case, defense counsel indicated to the court that she intended to call two witnesses to testify, V and A.[6] Following the conclusion of A's testimony, defense counsel stated that she had "[n]othing further" and that the defense rested. At that time, neither the court nor defense counsel made any statements regarding the defendant's decision not to testify, and the defendant, who had remained silent when his counsel stated that the defense had nothing further, did not make any representations to the court indicating that he wanted to testify.[7] Subsequently, the court

---

[5]See footnote 8 of this opinion.

[6]The court admitted into evidence an exhibit offered by the defendant, which was a screenshot taken from video footage from Finney's body camera that showed a "hickey mark" on A's neck.

[7]Prior to hearing arguments from counsel, the court first addressed a due process claim that previously had been raised by defense counsel regarding Finney's testimony about the hearsay statements of H and the fact that H did not testify at the hearing, which precluded the defendant's ability to cross-examine H regarding her statements. The defendant has not raised any due process claim in this appeal concerning the court's admission of Finney's testimony about the hearsay statements

heard arguments from counsel, after which it stated its decision orally on the record. Specifically, the court found that the state had proven, by a preponderance of the evidence, that the defendant committed risk of injury to a child through his text communications with H[8] and

of H and the defendant's inability to cross-examine H. Accordingly, we deem any such claim abandoned. See, e.g., *State* v. *Antwon B.*, 236 Conn. App. 428, 449 n.14, 348 A.3d 814 (2025) ("claims of error not briefed are considered abandoned" (internal quotation marks omitted)), cert. denied, 354 Conn. 910, 349 A.3d 1094 (2026).

[8]Specifically, the court stated: "I do find that the defendant has committed risk of injury to a [child]. Specifically, with the full exhibit 3, the text messages that were presented by the state, and they were photographed copies of screenshots that were on the telephone, the cell telephone of [H]. I want to point out certain things I observed by that conversation. It first starts off by indicating, '[h]ow bad are you,' with a response from the person purported to be [H], the phone holder, saying, '[w]ho is this?' And then followed up with a '[h]ello.' Then the person, and, again, I'm going to complement this by the testimony I heard, I heard that through questioning from [Finney, the defendant] did acknowledge that he was involved in a text conversation with [H]. [The defendant] then indicates, '[w]hen do you turn 16.' She says, '[n]ext March.' And he says, '[a]nd stop acting surprised . . . keep a secret . . . shhh.' [H] then texts, '[t]f' [and] '[w]ho is this,' to which [the defendant] says, '[i]t's me . . . look up.' Now, that sequence, and this is what I was presented with, this sequence of conversation on [H's] phone entirely contradicts the testimony of the defense witnesses that [H] actually initiated this conversation. To the court's understanding, this is a conversation initiated by [the defendant]. [H] then says, '[w]hy do u want to no when I turn 16.' [The defendant] says, '[h]ow bad are you was the original question.' [H] says, '[l]ike sexual?' [The defendant] says, '[c]an you keep a secret?' [H] responds, '[o]k, [y]es.' [The defendant] then says, '[y]ou're bad, I'm sorry.' [H] says, '[d]o u like me.' [The defendant] says, '[y]ou're cute, but young. I didn't want to scare you just now.' [H] says, '[i]t's ok.' [The defendant] then says, '[y]ou sure, ok . . . I guess delete this since I made you feel awkward. . . . Please don't say anything.' [H] responds, '[o]k.' [The defendant] then says, '[s]ure you ok?' [H] then responds, '[y]eah,' to which [the defendant] writes, '[h]ow bad are you was the original question that you never answered. . . . [N]ot bad enough to do something wild with someone older? is that too much for you beautiful?' [H] then responds, 'I've never done something.' And then [the defendant] says, '[y]ou told us you weren't a virgin . . . that you did give oral sex before.' Now, in that context, considering this text message sequence alone, the court finds that the defendant, unsolicited, committed risk of injury to a [child]. By his own words, he does acknowledge that the recipient of this message is under sixteen years of age. He acknowledges the awkward nature of this communication, either the awkward nature of the communication

thereby violated his probation.[9] Subsequently, after hearing arguments from counsel and a statement from the defendant, in which he stated that he "appreciated the court's fairness in this matter," the court revoked the defendant's probation and sentenced him to four years of incarceration. This appeal followed.

On appeal, the defendant claims that his due process right to testify on his own behalf was violated because the record does not demonstrate that he knowingly and voluntarily waived that right at the violation of probation hearing.[10] At the outset, the defendant acknowledges that he did not raise this due process claim at trial and seeks review of it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified

or the hearsay testimony that this was a sequence of communications in the middle of him exposing himself. The court, however, finds that the content alone of the communications [is] enough and sufficient to establish that he has committed risk of injury to a [child]. I don't believe that there is any mystery. There is no double meaning as to what he could be intending when he asks about her age and doing something wild with someone older."

[9]With respect to the state's allegations that the defendant also violated his probation by exposing his penis to H and making sexual comments to her in which he offered to pay her money if she performed oral sex on A, the court stated: "I'm not indicating that those other allegations fall short of preponderance of the evidence. I'm indicating to you [counsel] that, based on my finding of facts and considering the entirety of the evidence, I believe that the defendant has committed risk of injury to a [child], specifically, based on the allegations of the text messages sent to [H] . . . [that] are contained in state's exhibit 3."

[10]We note that, throughout much of his appellate briefs, the defendant, in asserting his due process claim, focuses on the court's failure to "conduct an on-the-record colloquy at any stage in the proceedings regarding whether [the defendant] understood his right to testify and his waiver of that right." He also contends that the court was required, pursuant to *Morel-Vargas*, to canvass him or to inquire of defense counsel directly to determine whether counsel adequately had advised the defendant regarding his right to testify and the waiver of that right. For reasons explained in part III of this opinion, we reject these claims. The defendant's contention that his right to testify was violated, however, is also premised on his claim that his waiver of his constitutional right to testify had to be knowing and voluntary, and that the totality of the record fails to provide sufficient assurance of a constitutionally valid waiver. Our analysis in this opinion focuses on that aspect of his claim of a constitutional violation.

by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[11] "Under *Golding*, 'a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' . . . *State* v. *Golding*, supra, 239–40; see *In re Yasiel R.*, supra, 781 (modifying third prong of *Golding*)." (Emphasis in original.) *State* v. *Morel-Vargas*, supra, 343 Conn. 253. We conclude that the record is adequate for review of this claim[12] and that the claim is of constitutional magnitude. See id., 253–54; see also *State* v. *Christopher R.*, 222 Conn. App. 763, 771, 306 A.3d 1117 (2023), cert. denied, 348 Conn. 946, 308 A.3d 34

---

[11]The defendant also seeks review of his unpreserved due process claim under the plain error doctrine and claims that the due process violation constituted structural error. See footnotes 21 and 25 of this opinion.

[12]We disagree with the state's contention that the record is inadequate for review of this claim. In making that assertion, the state relies on *State* v. *Taveras*, 219 Conn. App. 252, 256, 295 A.3d 421, cert. denied, 348 Conn. 903, 301 A.3d 527 (2023), which involved an unpreserved claim that the trial court's admission of testimony containing hearsay during a violation of probation hearing violated the defendant's due process right to cross-examine the declarant of the hearsay statements. Specifically, the defendant in *Taveras* claimed that the trial court improperly had failed to conduct the balancing test set forth in *State* v. *Shakir*, 130 Conn. App. 458, 467–68, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011), and "to determine whether good cause existed for his inability to confront and cross-examine [the declarant] at the probation revocation hearing . . . ." *State* v. *Taveras*, supra, 265. This court concluded that the record was inadequate to review the alleged due process violation under *Golding* because the defendant did not distinctly raise the balancing issue with the court at the violation of probation proceeding, such that "the court had no occasion to consider whether there was good cause not to allow confrontation." Id., 268; see id. ("[t]his court has determined . . . that where the defendant does not request that the court conduct the *Shakir* balancing test, or make a good cause finding, the record is inadequate for review of a due process claim under the first prong of *Golding*" (internal quotation marks

(2024); *State* v. *Frazier*, 181 Conn. App. 1, 35, 185 A.3d 621, cert. denied, 328 Conn. 938, 184 A.3d 268 (2018). Accordingly, we first focus our inquiry on whether the claimed constitutional violation exists.

In support of his due process claim, the defendant asserts that the right to testify in a violation of probation proceeding is a fundamental constitutional right and that, therefore, for a waiver of that right to be effective, it must be knowing, intelligent, and voluntary. Relying on *Morel-Vargas*, he further contends that it was not necessary that he "take affirmative action to invoke the due process right to testify on his behalf" and that the record in this case "does not [furnish] sufficient assurance of a constitutionally valid waiver of [his] right to testify," as "the trial court never canvassed [him] about his constitutional right to testify," defense counsel "did not make any statements or representations to the court that [the defendant] was waiving his right to testify," and a "waiver [could not] be inferred from a silent record . . . ."

In response, the state highlights the differences between criminal trials and violation of probation proceedings, which "implicate fewer rights because revocation is not new punishment for a new crime." (Internal quotation marks omitted.) Recognizing that "probationers are entitled to certain minimum procedural safeguards under the due process clause of the fourteenth amendment," which are detailed in § 53a-32; see footnote 1 of this opinion; the state, nonetheless, emphasizes that a violation of probation proceeding is informal in nature, should not be equated with a criminal trial, and requires

omitted)); see also *State* v. *Crespo*, 190 Conn. App. 639, 647, 211 A.3d 1027 (2019). We conclude that the state's reliance on *Taveras* for the proposition that there is no factual record to review the defendant's unpreserved due process claim is misplaced, as the present case does not involve a claimed violation of the right of confrontation in a violation of probation proceeding, which implicates the *Shakir* balancing test and requires a good cause finding by the trial court. Rather, the defendant's unpreserved due process claim in the present case requires us to

only limited due process protections. As a result, the state contends that courts are not required to canvass a defendant regarding a waiver of the right to testify at a violation of probation proceeding. The state further contends that, because a defendant's due process right to testify at a violation of probation proceeding is not "equivalent to a criminal defendant's right to testify at a criminal trial," a defendant's waiver of the right to testify at a violation of probation proceeding need not be knowing, intelligent, and voluntary. Therefore, according to the state, the defendant's reliance on *Morel-Vargas*, which pertains to defendants in criminal trials, is misplaced.

In support of its claim that a defendant's waiver of the right to testify at a violation of probation hearing need not be knowing, intelligent, and voluntary, the state relies on federal case law holding that the inquiries mandated to assure the knowing and intelligent entry of a guilty plea set forth in rule 11 of the Federal Rules of Criminal Procedure[13] and *Boykin* v. *Alabama*,

determine what is constitutionally required in a violation of probation proceeding for a defendant to make a valid waiver of his right to testify and whether a constitutional violation exists, which can be determined on the basis of the record before us.

[13]Rule 11 (b) (1) of the Federal Rules of Criminal Procedure provides: "Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

"(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

"(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

"(C) the right to a jury trial;

"(D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;

"(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

"(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

395 U.S. 238, 242–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969),[14] are not required when a court accepts a defendant's admission to a violation of probation. Finally, the state contends that the record in this case nevertheless demonstrates that the defendant was afforded his minimum procedural due process protections, including the opportunity to be heard in person, as he was present when his attorney indicated to the court that the defendant had no additional witnesses and rested the defendant's case, and there is nothing in the record indicating that the defendant wanted to testify and was prevented from doing so.

Before we address the merits of the arguments raised by the parties, we first set forth the legal principles governing probation in general and violation of probation proceedings, as well as the standards governing our review of a judgment revoking a defendant's probation. "[P]robation is, first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended

---

"(G) the nature of each charge to which the defendant is pleading;

"(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

"(I) any mandatory minimum penalty;

"(J) any applicable forfeiture;

"(K) the court's authority to order restitution;

"(L) the court's obligation to impose a special assessment;

"(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the [United States] Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553 (a);

"(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

"(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future."

[14]In *Boykin*, the United States Supreme Court held that "[i]t was error . . . for the trial judge to accept [the] petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary," that waiver cannot be presumed from a silent record, and that a court must canvass an accused to make sure he has a full understanding of the consequences of his plea. *Boykin* v. *Alabama*, supra, 395 U.S. 242–44.

sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to [ensure] that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004).

"The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate." (Internal quotation marks omitted.) Id. Nevertheless, "the privilege of probation, once granted, is a constitutionally protected interest." *State* v. *Davis*, 229 Conn. 285, 294, 641 A.2d 370 (1994); see also *State* v. *Orr*, 199 Conn. App. 427, 434–35, 237 A.3d 15 (2020). To that end, "[t]he due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 182. The United States Supreme Court delineated those procedural safeguards in *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), in the context of a revocation of parole proceeding. Specifically, the court held that the minimum requirements of due process include "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Id. Those requirements have been deemed to apply to violation of probation proceedings; see *Gagnon* v. *Scarpelli*, 411

U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) ("'[Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer*, supra, [482].'" (Footnote omitted.)); and are embodied in § 53a-32. "Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review." (Internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 279, 248 A.3d 4 (2021).

Even though a violation of probation "proceeding must comport with the requirements of due process, it is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, supra, 229 Conn. 295; see also *State* v. *Randy G.*, 195 Conn. App. 467, 477, 225 A.3d 702 ("[r]evocation of [probation] is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to [probation] revocations" (internal quotation marks omitted)), cert. denied, 335 Conn. 911, 229 A.3d 472 (2020). For example, "the state must prove each alleged violation of probation by a preponderance of the evidence at a revocation proceeding, in accordance with . . . § 53a-32 . . . ." (Footnote omitted; internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 183–84; see also *State* v. *Wade*, 351 Conn. 745, 759–60, 333 A.3d 90 (2025) (right to confront witnesses at violation of probation hearing is not absolute and is subject to balancing of defendant's interest in confrontation against government's reasons for not producing witness and reliability of proffered hearsay); *State* v. *Altajir*, 303 Conn. 304, 319 n.6, 33 A.3d 193 (2012) ("'Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. . . . Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled

self-incrimination available to a probationer.'"); *State* v. *Taveras*, 219 Conn. App. 252, 270, 295 A.3d 421 ("[t]he rules of evidence do not apply to probation revocation hearings and, thus, relevant hearsay evidence is admissible at the discretion of the trial court" (internal quotation marks omitted)), cert. denied, 348 Conn. 903, 301 A.3d 527 (2023).

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Dunbar*, 233 Conn. App. 297, 310, 339 A.3d 642, cert. denied, 353 Conn. 913, 344 A.3d 155 (2025). "A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 182–83. "On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Orr*, supra, 199 Conn. App. 436.[15]

---

[15]In the present case, the defendant has not challenged the court's finding that he violated his probation, or its dispositional determination revoking his probation and imposing a four year sentence of incarceration. Therefore, any issues pertaining to the violation of probation

With these principles in mind, we turn next to a discussion of the constitutional right to testify and our Supreme Court's decision in *Morel-Vargas*.

## I

In *Rock* v. *Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987), the United States Supreme Court, in addressing the constitutional right of defendants in criminal cases to testify, stated: "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the [c]onstitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' . . . The necessary ingredients of the [f]ourteenth [a]mendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony: 'A person's right to reasonable notice of a charge against him, and *an opportunity to be heard in his defense*—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' . . .

"The right to testify is also found in the [c]ompulsory [p]rocess [c]lause of the [s]ixth [a]mendment, which grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the [s]tates by the [f]ourteenth [a]mendment. *Washington* v. *Texas*, 388 U.S. 14, 17–19 [87 S. Ct. 1920, 18 L. Ed. 2d 1019] (1967). Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' *United States* v. *Valenzuela-Bernal*, 458 U.S. 858, 867 [102 S. Ct. 3440, 73 L. Ed. 2d 1193] (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal

finding and the court's revocation of the defendant's probation and sentence are not before us in this appeal. See, e.g., *State* v. *Antwon B.*, 236 Conn. App. 428, 449 n.14, 348 A.3d 814 (2025) ("claims of error not briefed are considered abandoned" (internal quotation marks omitted)), cert. denied, 354 Conn. 910, 349 A.3d 1094 (2026).

cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony." (Citations omitted; emphasis in original; footnotes omitted.) *Rock* v. *Arkansas*, supra, 483 U.S. 51–52. The court stated further that "the [s]ixth [a]mendment grants to the accused *personally* the right to make his defense. It is the accused, not counsel, who must be informed of the nature and cause of the accusation, who must be confronted with the witnesses against him, and who must be accorded compulsory process for obtaining witnesses in his favor. . . . *Even more fundamental to a personal defense than the right of self-representation*, which was found to be necessarily implied by the structure of the [a]mendment . . . *is an accused's right to present his own version of events in his own words*. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. The opportunity to testify is also a necessary corollary to the [f]ifth [a]mendment's guarantee against compelled testimony. . . . Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." (Citation omitted; emphasis altered; internal quotation marks omitted.) Id., 52. Like a defendant in a criminal trial, a defendant in a violation of probation proceeding also has a constitutional right to be heard in person and, thus, to testify on his own behalf. See *Gagnon* v. *Scarpelli*, supra, 411 U.S. 782; *Morrissey* v. *Brewer*, supra, 408 U.S. 489; *State* v. *Davis*, supra, 229 Conn. 294–95 n.10; see also General Statutes (Rev. to 2023) § 53a-32.

On appeal, the state mistakenly relies on the general principle that probationers are not entitled to the same *procedural* protections afforded to criminal defendants as support for its contention that a defendant's constitutional right to testify at a violation of probation proceeding is not "equivalent to that of a criminal defendant's right to testify in a criminal trial" and is somehow different from or less than what the state refers to as the "absolute right to testify at an adversarial criminal trial." As we have explained, a violation of probation proceeding "does not require all of the *procedural*

*components* associated with an adversary criminal proceeding"; (emphasis added) *State* v. *Davis*, supra, 229 Conn. 295; in that, in a violation of probation proceeding, the lesser standard of proof by a preponderance of the evidence applies, the rules of evidence are not applicable, the right of confrontation is not absolute, there is no right to a jury trial, and a probationer is not entitled to the privilege against self-incrimination. Those differences notwithstanding, defendants in criminal trials *and* at violation of probation proceedings equally enjoy *a constitutional right* to be heard or to testify. There is nothing in *Morrissey* and *Gagnon*, which extended the constitutional right to testify to parole and probation revocation proceedings, indicating that the right to be heard on one's own behalf at such a proceeding is somehow different from the right to do so at a criminal trial, and the state has not directed this court to any authority to support such a conclusion. Indeed, the United States Supreme Court in *Rock*, discussing the constitutional right to testify in criminal cases, noted that "[t]*his right* reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify. See, e.g., *Gagnon* v. *Scarpelli*, [supra, 411 U.S. 782] (probation revocation); *Morrissey* v. *Brewer*, [supra, 408 U.S. 489] (parole revocation); *Goldberg* v. *Kelly*, 397 U.S. 254, 269 [90 S. Ct. 1011, 25 L. Ed. 2d 287] (1970) (termination of welfare benefits)." (Emphasis added.) *Rock* v. *Arkansas*, supra, 483 U.S. 51 n.9. The central question in this appeal is not whether the constitutional right to testify at a violation of probation proceeding is different from the constitutional right to testify at a criminal trial. Rather, the primary question we must decide is whether our Supreme Court's determination in *Morel-Vargas* of what is constitutionally required to demonstrate a valid waiver of that right at a criminal trial should apply in violation of probation proceedings as well. We, thus, turn to a discussion of *Morel-Vargas*.

In *State* v. *Morel-Vargas*, supra, 343 Conn. 247, our Supreme Court addressed "significant questions" concerning the right to testify that were "left unanswered by *Rock*," namely, whether the right to testify is a tactical or personal constitutional right and, if it is a personal right, "what is constitutionally required to demonstrate that a criminal defendant, himself, knowingly, intelligently and voluntarily waived that right." Id., 254.

Although the court's constitutional analysis in *Morel-Vargas* arose in the context of a criminal case, we nonetheless find it informative to the issue before us in the present case, which similarly involves the constitutional right to testify, albeit in the context of a violation of probation proceeding.

At the outset, the court in *Morel-Vargas* explained that, " '[i]n general, federal and state constitutional and statutory rights can be waived' "; id., 259; and that "[w]hat suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . *New York* v. *Hill*, 528 U.S. 110, 114, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000). Included in the former category of rights are decisions personal to a criminal defendant—namely, decisions that affect personal constitutional rights—such as the decision of whether to enter a guilty plea, waive a jury trial, and pursue an appeal. See *State* v. *Gore*, [288 Conn. 770, 779 n.9, 955 A.2d 1 (2008)]. Included in the latter category are tactical rights, which primarily involve trial strategy and tactics, such as the statutory protection of a probable cause hearing . . . the right to call witnesses . . . and the composition of a jury charge." (Internal quotation marks omitted.) *State* v. *Morel-Vargas*, supra, 343 Conn. 254–55.

Ultimately, our Supreme Court concluded "that a defendant's right to testify is a personal constitutional right that can be waived only by the defendant." Id., 256. The court reached that decision on two grounds. Id. First, it noted that the United States Supreme Court in *Rock* had "compare[d] a criminal defendant's right to testify with the right of self-representation and described the defendant's right to testify as [*e*]*ven more fundamental to a personal defense* than the right of self-representation . . . . The court's designation of the right to testify in one's own defense as more fundamental than the right to self-representation—which the court deemed a personal constitutional right in *Faretta* v. *California*, 422 U.S. 806, 819–20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)— logically implies that the decision of whether to testify is also personal to the defendant. Second, in *Rock*, the Supreme Court noted that a criminal defendant's right to testify is a necessary corollary to the [f]ifth [a]mendment's guarantee against compelled testimony. . . . Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Morel-Vargas*, supra, 343 Conn. 256–57.

Next, the court in *Morel-Vargas* addressed "whether the constitution mandates the form the waiver of [the right to testify] must take." Id., 258. The court explained: "The standard for an effective waiver of a constitutional right related to the procedure for the determination of guilt or innocence, such as the right to testify in one's own defense, 'is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather

than on observance of analogous procedural rules prescribed by statute or by the [rules of practice]. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to [testify]. . . . Our inquiry is dependent [on] the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the [defendant]. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record. See *Boykin* v. *Alabama*, [supra, 395 U.S. 243].' . . . *State* v. *Gore*, supra, 288 Conn. 776–77.

"In determining the form that the waiver of a criminal defendant's constitutional right to testify must take, we recognize that, in some areas involving personal constitutional rights, this court has required an affirmative waiver by the defendant, himself, on the record, following a trial court's inquiry. See, e.g., *State* v. *Braswell*, 318 Conn. 815, 828, 123 A.3d 835 (2015) (assistance of counsel); *State* v. *Gore*, supra, 288 Conn. 783–84 (jury trial); *State* v. *Carter*, 243 Conn. 392, 397–98, 703 A.2d 763 (1997) (guilty plea). For certain other personal constitutional rights, however, we have determined that a trial court may properly infer waiver from the defendant's conduct. See, e.g., *State* v. *Pires*, 310 Conn. 222, 246–49, 77 A.3d 87 (2013) (right to self-representation); *State* v. *Castonguay*, 218 Conn. 486, 491–92 n.2, 590 A.2d 901 (1991) (right against self-incrimination).

"The majority of courts that have considered the requirements for a valid waiver of the right to testify have determined that a criminal defendant's waiver of this right may be inferred from the defendant's conduct, namely, from the defendant's act of not taking the stand; see, e.g., *State* v. *Thomas*, 128 Wn. 2d 553, 559, 910 P.2d 475 (1996); or defense counsel's in-court representation

that the defendant has elected not to testify, together with the defendant's coincident silence. . . . Courts have also declined to create a per se canvass requirement on the ground that a colloquy with a judge regarding the right to testify may, in some circumstances, risk improperly influencing a defendant's decision *not* to testify." (Citations omitted; emphasis in original.) *State* v. *Morel-Vargas*, supra, 343 Conn. 260–62. Accordingly, our Supreme Court determined, "consistent with the majority of federal courts of appeals that have ruled on this issue . . . that a trial court is not constitutionally required to obtain an on-the-record waiver from the criminal defendant, himself. . . . In so holding, we emphasize that it is defense counsel's responsibility to advise his or her client, the defendant, of the benefits and hazards regarding the decision of whether to testify, to discuss the strategic benefits involved, and to inform the defendant that this decision is ultimately the defendant's to make." (Citations omitted.) Id., 263–64.

After applying those principles, the court in *Morel-Vargas* concluded: "In this case, the record indicates that the defendant had 'extensive conversations' with his counsel regarding his decision whether to testify. Before the state rested its case, defense counsel spoke with the defendant again regarding his decision whether to testify, giving the defendant an additional opportunity to exercise his right after viewing and hearing all of the state's evidence. Furthermore, the defendant was present in court when defense counsel informed the trial judge that the defendant would not testify, and the defendant did not express any disagreement or concern with counsel's representation, much less any desire to the contrary. The defendant was also present when the jury returned and defense counsel indicated that the defense would 'rest on the state's case,' and the defendant again remained silent. As we have explained, in the absence of evidence to the contrary, we presume, for purposes of a constitutional challenge, that defense counsel provided the defendant with the information necessary to make an informed decision regarding whether to testify. . . .

The record in this case is devoid of any indication that the defendant's silence was the product of anything other than a knowing, intelligent and voluntary waiver. Accordingly, we conclude that defense counsel's in-court representation that the defendant waived his right to testify, together with the defendant's coincident silence, was sufficient to satisfy the constitutional requirement for a valid waiver of the defendant's right to testify. The defendant's unpreserved constitutional claim therefore fails *Golding*'s third prong." (Citation omitted.) Id., 267.

In *Morel-Vargas*, however, our Supreme Court "exercise[d] [its] supervisory authority prospectively to require a trial court, when presiding over *a criminal trial*, to either canvass the defendant prior to his waiver of his right to testify or, alternatively, to inquire of defense counsel directly to determine whether counsel has adequately advised the defendant regarding the waiver of his right to testify." (Emphasis added.) Id., 270. As the court stated: "This latter option—a judicial inquiry of defense counsel—shall be used, however, only when defense counsel advises the trial court that counsel believes that a direct canvass carries the risk of inadvertently interfering with a decision made by the defendant after extensive conversations with counsel regarding trial strategy." Id., 270–71.

With this background in mind, we turn to the issue on appeal.

II

In order to determine whether the defendant established a due process violation of his constitutional right to testify at the violation of probation hearing, we must determine whether the principles promulgated by our Supreme Court in *Morel-Vargas* regarding the constitutional right to testify and what is constitutionally required to effect a valid waiver of that right apply equally to a violation of probation proceeding, which, as we have stated, is not a criminal proceeding. In answering that question in the affirmative, we are guided by the following.

To begin with, we find significant the court's determination in *Morel-Vargas* "that a defendant's right to testify is a personal constitutional right"; id., 256; and that its waiver must be knowing, intelligent, and voluntary. Id., 260. We cannot discern any compelling reason why that determination should not apply with equal force to a defendant's right to testify in a violation of probation proceeding given the nature of the right at stake. This is especially true when the holding in *Morel-Vargas* is considered in conjunction with the statement from the United States Supreme Court in *Rock* v. *Arkansas*, supra, 483 U.S. 52, that the right to testify is "[e]ven more fundamental to a personal defense than the right of self-representation," and with our Supreme Court's decision in *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009). A brief explanation of *Connor* is necessary.

In *Connor*, the defendant appealed from a judgment of conviction of various criminal offenses and a judgment finding him in violation of and revoking his probation, which previously had been imposed in connection with a prior, unrelated conviction. Id., 486. On appeal, the defendant claimed that the trial court improperly found that he was competent to waive his right to counsel in both cases. Id., 487. In *Connor*, the day after the jury returned its verdict in the defendant's criminal case, at which the trial court had fully canvassed him regarding his waiver of his right to counsel, the court held a hearing with respect to the violation of probation charge against the defendant. At that hearing, the court asked the defendant whether he " 'still want[ed] to represent [him]self,' " and the defendant answered in the affirmative. Id., 531. The court, "without canvassing the defendant further, honored the request . . . ." Id., 504. Our Supreme Court concluded that the defendant was "entitled to a new probation violation hearing because the trial court failed to ensure that the defendant had waived his right to counsel knowingly, intelligently and voluntarily in the probation violation case." Id., 487.

In reaching that conclusion pertaining to the defendant's waiver of the right to counsel in a violation of probation proceeding, the court in *Connor* relied on *State* v. *T.R.D.*, 286 Conn. 191, 206, 942 A.2d 1000 (2008), a criminal case in which our Supreme Court iterated that "a waiver of the right to counsel does not satisfy constitutional requirements unless the record reflects that the defendant was aware of the range of possible punishments." *State* v. *Connor*, supra, 292 Conn. 532. In *Connor*, our Supreme Court held: "Our conclusion in *T.R.D.* is equally applicable in the present [violation of probation] case." Id.

Three important points can be derived from *Connor*. First, given that a waiver of the right to counsel at a violation of probation hearing must be knowing, intelligent, and voluntary, and that the right to testify is considered to be "[e]ven more fundamental" than the right to self-representation; *Rock* v. *Arkansas*, supra, 483 U.S. 52; it logically follows that a waiver of the right to testify at a violation of probation proceeding also must be knowing, intelligent, and voluntary to be constitutionally valid. See, e.g., *State* v. *Morel-Vargas*, supra, 343 Conn. 256 ("[t]he court's designation of the right to testify in one's own defense as 'more fundamental' than the right to self-representation . . . which the court deemed a personal constitutional right . . . logically implies that the decision of whether to testify is also personal to the defendant" (citation omitted)).

Second, *Connor* demonstrates that our Supreme Court has looked to and relied on case law concerning the constitutional rights of criminal defendants in determining what is also constitutionally required for a defendant in a violation of probation proceeding. This court recently did so as well in *State* v. *Owens*, 235 Conn. App. 482, 345 A.3d 489 (2025). *Owens* involved an appeal in a violation of probation case in which the defendant alleged that the trial court at his violation of probation hearing violated his right to self-representation by impermissibly delaying its canvass of him with respect to his request

to represent himself.[16] Id., 490. In *Owens*, this court noted that "[b]oth the federal constitution and our state constitution afford a *criminal* defendant the right to [forgo] the assistance of counsel and to choose instead to represent himself or herself at trial." (Emphasis added; internal quotation marks omitted.) Id., 491–92. This court further cited to and applied the general rule in *State* v. *Petteway*, 351 Conn. 682, 691–93, 332 A.3d 196 (2025), a criminal case, that, "[o]nce a defendant invokes his right to self-representation, a trial court must canvass that defendant to determine if the defendant's invocation of that right and the corollary waiver of the right to counsel were both voluntary and intelligent. . . . A court must indulge in every reasonable presumption against the waiver or forfeiture of fundamental constitutional rights, and must not presume acquiescence in the loss of fundamental rights." (Internal quotation marks omitted.) *State* v. *Owens*, supra, 492.

As in *Connor*, this court in *Owens* applied the rule set forth in a criminal case concerning a particular constitutional right to a violation of probation case involving that same constitutional right. As a result, we find unavailing the state's claim that, because *Morel-Vargas* is a criminal case, it is inapplicable to the present violation of probation case.

Third, *Connor* demonstrates that, despite the facts that defendants in violation of probation cases have limited due process rights, and that violation of probation proceedings are informal and not criminal in nature, the waiver of a personal, fundamental constitutional right at a violation of probation proceeding requires

---

[16]See also *Gentry* v. *Warden*, 167 Conn. 639, 645, 356 A.2d 902 (1975) ("The right to assistance of counsel is guaranteed to a defendant in a criminal proceeding by the sixth and fourteenth amendments to the constitution of the United States. *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [1963]. That right has been extended to all defendants in probation violation hearings in this state by § 53a-32 . . . and it is mandated by due process in cases where the probationer requests counsel and claims that he did not commit the alleged violation or that there are substantial reasons which justified or mitigated the violation. *Gagnon* v. *Scarpelli*, [supra, 411 U.S. 778].").

that such waiver be knowing, intelligent, and voluntary. In *Morrissey* v. *Brewer*, supra, 408 U.S. 489, the court "emphasize[d]" that a parole revocation proceeding should not be equated with "a criminal prosecution in any sense," and that the procedures in such revocation proceedings "should be flexible . . . ." Nevertheless, and notwithstanding the differences between the two types of proceedings and the more informal nature of a violation of probation proceeding, courts in violation of probation cases consistently either have recognized or imposed procedural requirements akin to those required in criminal cases when *personal*, *fundamental* constitutional rights are involved, as opposed to tactical rights.

For example, in *State* v. *Woods*, 158 Conn. App. 231, 232–33, 118 A.3d 691 (2015), the defendant appealed from the judgment of the trial court finding him in violation of his probation pursuant to § 53a-32. On appeal, the defendant claimed that "he was deprived of his right to counsel because the trial court failed to establish that his waiver of that right was made knowingly and intelligently. Specifically, the defendant argue[d] that the court improperly accepted his waiver of counsel without first establishing, either through the record or by way of a proper canvass, that he understood the range of permissible punishments to which he could be exposed if he was found to be in violation of probation." Id., 233. This court agreed and reversed the judgment of the trial court. Id. In doing so, this court cited to *State* v. *T.R.D.*, supra, 286 Conn. 202–203, for the well settled principles regarding the constitutional right of an accused to represent himself; *State* v. *Woods*, supra, 238–39; and, as we have noted, our Supreme Court, in *State* v. *Connor*, supra, 292 Conn. 532, found *T.R.D.* to be "equally applicable" to a violation of probation case. In *Woods*, this court also cited to *Connor* for the proposition that "minimum constitutional requirements must be satisfied before a defendant will be deemed to have waived his right to counsel." (Internal quotation marks omitted.) *State* v. *Woods*, supra, 241–42.

In *Woods*, this court stated further: "Although a valid waiver of counsel must be made with an appreciation for the potential range of punishment faced, the defendant 'does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in Practice Book § [44-3] *if the record is sufficient to establish that the waiver is voluntary and knowing.*' . . . *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005)." (Emphasis in original.) *State* v. *Woods*, supra, 158 Conn. App. 239–40. After a thorough review of the record, this court in *Woods* was not left "with sufficient assurance that the defendant understood the range of permissible punishments he faced if he were found to be in violation of his probation" and, thus, reversed the judgment and remanded the case for a new violation of probation hearing. Id., 247.

In the present case, the state contends that the knowing, intelligent, and voluntary standard for waiver of a constitutional right should not apply because a violation of probation proceeding is not one "for the determination of guilt or innocence." See *State* v. *Morel-Vargas*, supra, 343 Conn. 260 ("[t]he standard for an effective waiver of a constitutional right related to the procedure for the determination of guilt or innocence, such as the right to testify in one's own defense, is that it must be knowing and intelligent, as well as voluntary" (internal quotation marks omitted)); see also *Johnson* v. *Zerbst*, supra, 304 U.S. 464. The state's contention, however, is undermined by *Connor*, *Owens*, and *Woods*, all of which applied that standard in a violation of probation proceeding, albeit with respect to the waiver of the right to counsel. See also *State* v. *Schlosser*, 211 Conn. App. 143, 151, 271 A.3d 1074 (record reflected that defendant's admission

to violation of probation was knowing and voluntary), cert. denied, 343 Conn. 923, 275 A.3d 212 (2022).

Our conclusion also is supported by federal case law concerning constitutional rights afforded to defendants in violation of probation cases. The constitutional right to testify in a violation of probation proceeding was at issue in *State* v. *Dodson*, 25 F.3d 385 (6th Cir. 1994). In that case, the defendant claimed "that he was denied due process because the district court prohibited him from testifying at the final revocation hearing through direct examination." Id., 387. The United States Court of Appeals for the Sixth Circuit agreed with the defendant that, under the circumstances of his case, "his inability to testify in response to questions posed by his attorney violated due process." Id., 388. As the court explained: "The [f]ifth [a]mendment provides that no person shall be deprived of liberty without due process of law. Although revocation of probation is not part of a criminal prosecution, and thus the full panoply of due process protections accorded a defendant in such a proceeding do not apply to a revocation proceeding, the loss of freedom embodied in the revocation of probation constitutes a deprivation of a defendant's liberty. . . . Consequently, a defendant's probation may not be revoked without first according the defendant due process." (Citations omitted.) Id. Notably, the court stated in its decision that "[a] waiver of a constitutional right, particularly one involving individual liberty, must be knowingly and intelligently given." (Internal quotation marks omitted.) Id., 390.

In *United States* v. *Correa-Torres*, 326 F.3d 18, 20 (1st Cir. 2003), the United States Court of Appeals for the First Circuit decided what requirements must be met when a probationer or parolee waives his right to a revocation hearing under rule 32.1 of the Federal Rules of Criminal Procedure.[17] The court began by noting that, "[a]lthough revocations of probation, parole, or supervised release are not considered part of a criminal

_____
[17] We note that rule 32.1 (b) (2) of the Federal Rules of Criminal Procedure embodies the due process requirements that must be afforded

prosecution, they nevertheless entail a loss of freedom and a deprivation of liberty." Id., 22. The court concluded: "In our system of criminal justice, most rights can be waived. . . . The rights enumerated in [r]ule 32.1 are no exception. As a general proposition, however, *the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made. . . .* Because adherence to the processes prescribed by [r]ule 32.1 is instrumental to the fair and efficient operation of revocation proceedings, we hold that a waiver of the rights conferred thereunder cannot be effective unless that waiver is made both knowingly and voluntarily." (Citations omitted; emphasis added.) Id.

In its appellate brief, the state relies on federal case law pertaining to rule 11 of the Federal Rules of Criminal Procedure, which governs the obligations of a trial judge before accepting a plea of guilty or nolo contendere,[18] and *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, in which the United States Supreme Court held that due process requires that a criminal defendant's guilty plea be entered knowingly and intelligently after a canvass by the court. Specifically, the state contends that "multiple circuit courts have held that a voluntariness colloquy mandated by [r]ule 11 . . . and the due process standard established in *Boykin* . . . which is required when a court accepts a defendant's guilty plea at a criminal trial, is not

to a probationer or parolee set forth in *Gagnon* v. *Scarpelli*, supra, 411 U.S. 782, and *Morrissey* v. *Brewer*, supra, 408 U.S. 489.

Specifically, rule 32.1 (b) (2) provides: "Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

"(A) written notice of the alleged violation;

"(B) disclosure of the evidence against the person;

"(C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;

"(D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

"(E) an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1 (b) (2).

See also General Statutes (Rev. to 2023) § 53a-32.

[18]See footnote 13 of this opinion.

constitutionally required in a revocation proceeding." Although the state relies on this case law primarily in support of its claim that a court is not required to conduct an on-the-record voluntariness colloquy regarding a defendant's waiver of the right to testify in a violation of probation proceeding, which we will address in part III of this opinion, to the extent the state relies on this case law to support an inference that a waiver of the right to testify at a violation of probation proceeding need not be knowing, intelligent, or voluntary, we conclude that any such reliance is misplaced.

The federal case law relied on by the state addresses the issue of whether the procedures and protections that must be followed when a defendant in a criminal case enters a guilty plea also apply when a defendant admits to a violation of probation. In addressing that question in *United States* v. *Segal*, 549 F.2d 1293, 1296 (9th Cir.), cert. denied, 431 U.S. 919, 97 S. Ct. 2187, 53 L. Ed. 2d 231 (1977), the United States Court of Appeals for the Ninth Circuit first concluded that rule 11, which concerns the taking of a plea and not the imposition of sentence or the revocation of probation, was inapplicable to a violation of probation proceeding. The court next addressed whether the *Boykin* protections should be extended "so that the record would show a voluntary and intelligent waiver of the rights . . . forfeited by [an admission to a] violation of . . . probation." Id., 1298. The court declined to extend the *Boykin* protections, explaining that *Boykin* "required an affirmative showing on the record that a plea of guilty was knowing and voluntary because the plea is itself a conviction"; id.; and an admission to a probation violation "is not the equivalent of a guilty plea . . . ." Id., 1300. The court also explained that admissions of probation violations do not end the controversy, as a court must still decide whether a revocation of probation is warranted, and admissions, thus, do not automatically trigger sentencing. See id. The court further stated: "[I]t is questionable to what extent, if any, the three constitutional rights protected

by *Boykin*[19] are enjoyed by [the defendant] at the revocation proceeding"; (footnote added) id., 1298; as the defendant, at the probation violation hearing, had "at best an attenuated confrontation right, a limited self-incrimination privilege and no right to jury trial . . . ." Id., 1299. Notably, the court in *Segal* specifically stated that the defendant did "not claim that she was denied any of the rights described in *Gagnon* . . . ." Id., 1297.

Subsequent to *Segal*, many federal circuit courts of appeals similarly have declined to extend the requirements of rule 11 of the Federal Rules of Criminal Procedure and *Boykin* to an admission to a violation of probation. In *United States* v. *Pelensky*, 129 F.3d 63 (2d Cir. 1997), for example, the United States Court of Appeals for the Second Circuit held that "due process of law does not require a court to elicit a formal waiver [of the type required in rule 11 and *Boykin*] from a defendant who has admitted to violating the terms of probation or supervised release." Id., 68; see also *United States* v. *Melton*, 782 F.3d 306, 312 (6th Cir. 2015) (rule 11 is not applicable to proceedings to revoke supervised release); *United States* v. *Rapert*, 813 F.2d 182, 185 (8th Cir. 1987) ("[rule 11] and the requirements of *Boykin* . . . are not applicable to a probation revocation hearing"); *United States* v. *Stehl*, 665 F.2d 58, 60 (4th Cir. 1981) ("[r]ule 11 has no application to probation revocation proceedings"); *United States* v. *Johns*, 625 F.2d 1175, 1176 (5th Cir. 1980) (rule 11 is not applicable to violation of probation hearing).

Given that the present case does not involve the entry of a guilty plea and that the three constitutional rights protected by *Boykin* are not at issue in this appeal, which also does not involve an admission to a violation

[19]In *Boykin*, the court explained that "[s]everal federal constitutional rights are involved in a waiver that takes place when a guilty plea is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the [f]ifth [a]mendment and applicable to the [s]tates by reason of the [f]ourteenth [amendment]. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers." (Citations omitted.) *Boykin* v. *Alabama*, supra, 395 U.S. 243.

of probation, we find the state's reliance on this case law to be misplaced. Moreover, and significantly, even though these cases hold that the procedural protections of rule 11 of the Federal Rules of Criminal Procedure and *Boykin* do not apply to admissions to violations of probation and that no specific canvass is required with respect to such admissions, federal courts nonetheless require those admissions to be made knowingly and voluntarily. See *United States* v. *Massey*, Docket Nos. 22-2184-cr and 22-2628-cr, 2024 WL 1266347, *1 (2d Cir. March 26, 2024) (When a defendant wants to admit that he has violated the terms of his supervised release, the District Court need not engage in " 'a formal, on-the-record colloquy of the type required by [rule 11]' . . . . If a defendant wishes to waive the revocation hearing and admit to a violation, the [D]istrict [C]ourt must ensure that the waiver is knowing and voluntary." (Citations omitted.)); *United States* v. *Melton*, supra, 782 F.3d 311 ("accused's admission or waiver [at violation of probation proceeding] need only be knowing and voluntary under the totality of the circumstances"); *United States* v. *Correa-Torres*, supra, 326 F.3d 22 (rights enumerated in rule 32.1 of Federal Rules of Criminal Procedure apply to violation of probation proceedings and for waiver of those rights to be effective, waiver must be made knowingly and voluntarily); *State* v. *Pelensky*, supra, 129 F.3d 68 n.9 (conclusion that court is not required to elicit formal waiver from defendant who had admitted to violating probation does not change fact that "defendant's waiver must actually be knowing and voluntary"); see also *State* v. *Schlosser*, supra, 211 Conn. App. 151 (record reflected that defendant's admission to violation of probation was knowing and voluntary).[20]

Accordingly, we conclude that due process requires that a defendant's waiver of the constitutional right to

---

[20]Federal case law demonstrates that violation of probation proceedings are governed by rule 32.1 (b) (2) of the Federal Rules of Criminal Procedure; *United States* v. *Massey*, supra, 2024 WL 1266347, *1; which, as we have stated, embodies the due process requirements that must be afforded to a probationer or parolee set forth in *Gagnon* v. *Scarpelli*,

testify in a violation of probation proceeding be knowing, intelligent, and voluntary.

## III

Having concluded that a defendant's waiver of the constitutional right to testify in a violation of probation proceeding must be knowing, intelligent, and voluntary, we next address what is constitutionally required for such a waiver to be valid. To resolve this question, we look to *Morel-Vargas* for guidance.

In addressing this question in the context of a criminal trial, the court in *Morel-Vargas* held that "a trial court is not constitutionally required to obtain an on-the-record waiver from the criminal defendant, himself." *State* v. *Morel-Vargas*, supra, 343 Conn. 263–64. The court also "decline[d] to exercise [its] supervisory authority to create a per se rule requiring trial courts to canvass criminal defendants in all cases because there may be circumstances under which a canvass is inadvisable." Id., 269. It necessarily follows, and we agree with the state, that, if no such per se rule requiring a canvass exists in criminal cases, the trial court in the present violation of probation case was not required to conduct an on-the-record canvass of the defendant regarding the waiver of his right to testify.

Instead, as we previously have indicated in this opinion, the court in *Morel-Vargas* stated that its "task . . . [was] to determine whether the totality of the record furnishe[d] sufficient assurance of a constitutionally valid waiver of the right to [testify]. . . . [Such an] inquiry is dependent [on] the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the [defendant]. . . . In examining the record . . . [an appellate court] will indulge every reasonable presumption against waiver of fundamental constitutional

supra, 411 U.S. 782, and *Morrissey* v. *Brewer*, supra, 408 U.S. 489, including the right to be heard on one's own behalf. See footnote 17 of this opinion. A waiver of the rights enumerated in rule 32.1 "cannot be effective unless that waiver is made both knowingly and voluntarily." *United States* v. *Correa-Torres*, supra, 326 F.3d 22.

rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citation omitted; internal quotation marks omitted.) Id., 260.

After applying that standard and concluding that the defendant's waiver of his right to testify was constitutionally adequate under the circumstances of that case, the court in *Morel-Vargas* went a step further and "exercise[d] [its] supervisory authority prospectively to require a trial court, when presiding over *a criminal trial*, to either canvass the defendant prior to his waiver of his right to testify or, alternatively, to inquire of defense counsel directly to determine whether counsel has adequately advised the defendant regarding the waiver of his right to testify. This latter option—a judicial inquiry of defense counsel—shall be used, however, only when defense counsel advises the trial court that counsel believes that a direct canvass carries the risk of inadvertently interfering with a decision made by the defendant after extensive conversations with counsel regarding trial strategy.

"Although we do not prescribe the exact form that this canvass of a criminal defendant or inquiry of defense counsel should take, both inquiries must be sufficient to satisfy the trial court, at minimum, that (1) defense counsel informed the defendant that the defendant has the right to testify, as well as the right not to testify, and should the defendant choose not to testify, the fact finder may not draw any adverse inferences from the defendant's choice not to testify, (2) defense counsel explained to the defendant that the right to testify belongs to the defendant alone, and no one, including defense counsel, can prevent the defendant from testifying, (3) the defendant has consulted with counsel in making the decision not to testify, and counsel has discussed with the defendant the advantages and disadvantages of testifying, (4) the defendant has had enough time to discuss with counsel the right to testify and the

strategic decision not to testify, and the defendant has understood the information counsel has provided, and **(5) the defendant has personally waived the right to testify knowingly, intelligently and voluntarily." (Emphasis added.)** Id., 270–71.

In the present case, the defendant contends that the court's *prospective rule* in *Morel-Vargas* applies to this violation of probation case and that the trial court's failure to adhere to the requirements of the rule, thus, was improper. We do not agree. In establishing a rule for future cases pertaining to the waiver of the right to testify, our Supreme Court in *Morel-Vargas* clearly limited its prospective rule to "a trial court, when presiding over *a criminal trial* . . . ." (Emphasis added.) Id., 270. Consequently, it was not improper for the trial court in the present case not to apply that rule in the context of this violation of probation proceeding.

Guided by the standard applied by the court in *Morel-Vargas* in reaching its conclusion that no constitutional violation existed in that case, we conclude that, for a defendant's waiver of his right to testify in a violation of probation proceeding to be valid constitutionally, the record must furnish sufficient assurance that the defendant's waiver was knowing, intelligent, and voluntary. That determination must be made on the basis of the totality of the record. Certainly, although no formal canvass is required,[21] the most prudent approach for trial

---

[21]We decline the defendant's invitation to exercise our supervisory authority to require "a canvass . . . in all future probation proceedings," which, as we have indicated, would be contrary to the holding in *Morel-Vargas*. See *State* v. *James K.*, 209 Conn. App. 441, 481, 267 A.3d 858 (2021) ("[i]t is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice" (internal quotation marks omitted)), aff'd, 347 Conn. 648, 299 A.3d 243 (2023). At this juncture, we also decline to exercise our supervisory authority over the administration of justice to craft a prospective rule similar to the one in *Morel-Vargas* for violation of probation cases. The United States Supreme Court in *Morrissey* admonished against creating "an inflexible structure for parole revocation procedures"; *Morrissey* v. *Brewer*, supra, 408 U.S. 490; or equating such procedures with criminal prosecutions. Id., 489. In *State* v. *Shakir*, 130 Conn. App. 458, 22 A.3d

courts would be to canvass a defendant regarding a waiver of the right to testify. See *State* v. *Morel-Vargas*, supra, 343 Conn. 250 (**"we acknowledge that an on-the-record canvass of a defendant is the best practice to ensure that the defendant's waiver of his constitutional right to testify is made knowingly, intelligently and voluntarily"**). Alternatively, trial courts are free to utilize the factors set forth in *Morel-Vargas*, as previously discussed in this opinion, as a guideline for ensuring that a defendant's waiver of the right to testify at a violation of probation proceeding is knowing, intelligent, and voluntary. In other words, in whatever form—a canvass performed by the court, a representation by defense counsel that the defendant waived his right to testify, together with coincident silence of the defendant, or something else in the record—the record in a violation of probation hearing

1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011), this court stated: "[A] strict interpretation of the *Morrissey* standards runs contrary to the spirit of flexibility with which the Supreme Court promulgated the *Morrissey* and [*Gagnon*] . . . due process requirements. . . . [D]ue process is flexible and calls for those procedural protections that the particular situation demands." (Internal quotation marks omitted.) Id., 468. We believe that our decision today, which requires trial courts to ensure that a defendant's waiver of the right to testify at a violation of probation proceeding has been made knowingly, intelligently, and voluntarily, sufficiently safeguards a defendant's constitutional right to testify in a violation of probation proceeding, without the need for a formalistic rule setting forth how that may be accomplished. See *State* v. *Connor*, supra, 292 Conn. 518–19 n.23 ("[o]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts" (internal quotation marks omitted)). In other words, in a violation of probation proceeding, a defendant's waiver of his right to testify is valid constitutionally if "the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to [testify]." (Internal quotation marks omitted.) *State* v. *Morel-Vargas*, supra, 343 Conn. 260; see, e.*g.*, *State* v. *T.R.D.*, supra, 286 Conn. 203–204 (explaining that, although Practice Book § 44-3 requires trial court, before accepting defendant's waiver of counsel, to "conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently [made . . . the] court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in [§ 44-3] if the record is sufficient to establish that the waiver is voluntary and knowing" (citations omitted; internal quotation marks omitted)).

must provide sufficient assurance that the defendant knowingly, intelligently, and voluntarily waived his constitutional right to testify.

### IV

Next, we must determine whether the record in the present case demonstrates that the defendant's waiver of his right to testify was knowing, intelligent, and voluntary. We conclude that it does not and that the defendant is entitled to a new violation of probation hearing.

A brief discussion of the circumstances in *Morel-Vargas*, in which our Supreme Court found that the defendant's waiver of his right to testify was constitutionally valid, is helpful to our analysis. The record in *Morel-Vargas* indicated that the defendant had had "'extensive conversations' with his counsel regarding his decision whether to testify," and that he was provided with "an additional opportunity to exercise his right after viewing and hearing all of the state's evidence." *State* v. *Morel-Vargas*, supra, 343 Conn. 267. Moreover, our Supreme Court noted that "the defendant was present in court when defense counsel informed the trial judge that the defendant would not testify, and the defendant did not express any disagreement or concern with counsel's representation, much less any desire to the contrary. The defendant also was present when the jury returned and defense counsel indicated that the defense would 'rest on the state's case,' and the defendant again remained silent." Id. As a result, the court concluded that the record was "devoid of any indication that the defendant's silence was the product of anything other than a knowing, intelligent and voluntary waiver. Accordingly . . . defense counsel's in-court representation that the defendant waived his right to testify, together with the defendant's coincident silence, was sufficient to satisfy the constitutional requirement for a valid waiver of the defendant's right to testify." Id.

In contrast to *Morel-Vargas*, defense counsel in the present case did not make any representations to the

court about the defendant's decision not to testify, nor did the court inquire, and the record is devoid of any indications that defense counsel had discussions with the defendant regarding his right to testify and the waiver of that right. Indeed, the record shows only that defense counsel had informed the court that she had two witnesses who intended to testify, and when their testimony concluded, she told the court that she had "[n]othing further" and did not make any statement to the effect that the defendant had decided not to testify. The bare record in this case does not provide this court with sufficient assurance that the defendant's waiver of his right to testify was knowing, intelligent, and voluntary. See *State* v. *Morel-Vargas*, supra, 343 Conn. 260 ("a waiver of a fundamental constitutional right is not to be presumed from a silent record" (internal quotation marks omitted)). Consequently, the defendant has established the existence of a constitutional violation under the third prong of *Golding*.

Having reached that conclusion, we turn next to *Golding*'s fourth prong, which provides: "[I]f subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' . . . *State* v. *Golding*, supra, 213 Conn. [240] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Morel-Vargas*, supra, 343 Conn. 253. The defendant contends that the constitutional violation concerning the waiver of his right to testify "constitutes structural error that eliminates the need for harmless error analysis."[22] He argues that *Rock* v. *Arkansas*, supra, 483 U.S. 52, "made clear that the

---

[22]See *State* v. *Christopher R.*, supra, 222 Conn. App. 784 n.10 ("Structural errors are those which 'by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. . . . These are structural defects in the constitution of the trial mechanism, which defy analysis by [harmless error] standards. . . . Instead, structural errors require reversal of the defendant's conviction and a new trial. . . . Constitutional violations have been found to be structural, and thus subject to automatic reversal, only in a very limited class of cases.' . . . *State* v. *Joseph A.*, 336 Conn. 247, 264–65, 245 A.3d 785 (2020).").

right to testify is among those rights that 'are essential to due process of law in a fair adversary process,'" especially given the court's statement in *Rock* that the right to testify in one's own defense is " '[e]ven more fundamental to a personal defense' than the right to self-representation."[23] The state counters that the defendant "has failed to demonstrate that a structural error

[23]We note that, in *State* v. *Connor*, supra, 292 Conn. 487, 533, our Supreme Court, after determining that the defendant's right to counsel in the violation of probation proceeding had been violated, reversed the trial court's judgment revoking the defendant's probation and remanded the case for a new violation of probation hearing without conducting a harmless error analysis. In particular, the court stated: " 'The right to counsel is so basic that its violation mandates reversal even if no particular prejudice is shown and even if there is overwhelming evidence of guilt'. . . . *State* v. *T.R.D.*, supra, 286 Conn. 206. Consequently, the defendant is entitled to a new probation violation hearing." *State* v. *Connor*, supra, 532–33. This principle set forth in *Connor* and *T.R.D.*, both of which involved the denial of the right to counsel, can be traced back to *Rose* v. *Clark*, 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), in which the United States Supreme Court held: "In *Chapman* v. *California*, 386 U.S. [18, 87 S. Ct. 824, 17 L. Ed. 2d 705] (1967), this [c]ourt rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. . . . That principle has been applied to a wide variety of constitutional errors. . . . Despite the strong interests that support the harmless-error doctrine, the [c]ourt in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. [*Chapman* v. *California*, supra, 23 n.8], citing *Payne* v. *Arkansas*, 356 U.S. [560, 78 S. Ct. 844, 2 L. Ed. 2d 975] (1958) (introduction of coerced confession); *Gideon* v. *Wainwright*, 372 U.S. [335, 83 S. Ct. 792, 9 L. Ed. 2d 799] (1963) (complete denial of right to counsel); *Tumey* v. *Ohio*, 273 U.S. [510, 47 S. Ct. 437, 71 L. Ed. 749] (1927) (adjudication by biased judge). This limitation recognizes that some errors necessarily render a trial fundamentally unfair. The [s]tate of course must provide a trial before an impartial judge . . . with counsel to help the accused defend against the [s]tate's charge . . . . Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair. Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." (Citations omitted; internal quotation marks omitted.) *Rose* v. *Clark*, supra, 576–78. The

analysis is applicable to alleged errors at revocation hearings"; that, even if a structural error analysis applies, the defendant has failed to demonstrate structural error in this case; and that the alleged constitutional error was harmless. We conclude that we need not decide whether a structural error analysis properly can be applied in a violation of probation case or whether the constitutional violation in this case amounts to structural error because, even if we apply harmless error analysis, the state has failed to meet its burden of demonstrating harmlessness of the constitutional error beyond a reasonable doubt.

Initially, we briefly address the state's contention that the defendant has the burden of demonstrating harm in this case. In support of this assertion, the state relies on *State* v. *Varszegi*, 236 Conn. 266, 673 A.2d 90 (1996). In *Varszegi*, our Supreme Court held that "the defendant had the burden of showing likely harm *as a condition precedent* to establishing the due process violation." (Emphasis added.) Id., 274. We conclude that *Varszegi* is inapposite to the present case, in which we must determine, *after* having found the existence of a constitutional violation, whether that violation was harmful to the defendant. Moreover, our Supreme Court has differentiated between cases involving general due process claims and those, like the present case, involving the violation of a specifically enumerated constitutional right.[24] We conclude that the state has the burden in the

present case, unlike *Connor* and *T.R.D.*, involves the right to testify, which was not specifically addressed in *Rose*.

[24]Specifically, our Supreme Court has explained that, when a defendant alleges an infringement of "a specifically enumerated constitutional right, such as the fifth amendment right to remain silent or the sixth amendment right to confront one's accusers, and the defendant meets his burden of establishing the constitutional violation, the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt." *State* v. *Payne*, 303 Conn. 538, 563, 34 A.3d 370 (2012). As the court in *Payne* stated: "This allocation of the burden of proof is appropriate because, when a defendant raises a general due process claim, there can be no constitutional violation in the absence of harm to the defendant caused by denial of his right to a fair trial. The constitutional analysis and the harm analysis in such cases are one and the same." Id., 563–64; see *State* v. *Jose R.*, 338 Conn. 375, 386–87,

present case of demonstrating that the violation of the defendant's constitutional right to testify was harmless beyond a reasonable doubt.

We further conclude that the state has not met that burden in this case. In the context of a probation violation proceeding, "[a]n error is harmless if 'the error did not affect the . . . court's selection of the sentence imposed.'" *United States* v. *Reyes-Correa*, 81 F.4th 1, 9 (1st Cir. 2023); see also *United States* v. *Barksdale*, 98 F.4th 86, 89 (3d Cir. 2024). The state contends that, "based on the strength of the text messages alone, the defendant cannot demonstrate that, had he been canvassed, and had he testified, the trial court would not have found that he violated probation by a preponderance of the evidence." This argument ignores the structure of a violation of probation proceeding, and the fact that, even if the court would have found a violation of probation, regardless of whether the defendant testified, that does not necessarily mean that the court's decision revoking the defendant's probation and imposing a four year sentence would have been the same. See *United States* v. *Barksdale*, supra, 89 ("the government's theory shows at most that [the defendant] would have been found guilty, not that he would also have gotten the same sentence"); see id., 90 ("We cannot be certain that [the defendant's] testimony would have made no difference. Even if his testimony could have reduced his sentence only slightly, that is enough to make the error harmful."); see also *United States* v. *Havier*, 155 F.3d 1090, 1094 (9th Cir. 1998) (government's failure to provide adequate notice in violation of probation proceeding was not harmless when defendant could have received lower sentence).

---

258 A.3d 50 (2021) (reaffirming *Payne* and explaining that, "when a prosecutor makes improper remarks that violate a defendant's specifically enumerated constitutional rights, the constitutional analysis and the harm analysis are separate and distinct inquiries"); see also *State* v. *Carpenter*, 275 Conn. 785, 832, 882 A.2d 604 (2005) ("[w]here a claim is of constitutional magnitude, 'the state has the burden of proving the constitutional error was harmless beyond a reasonable doubt'"), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

Furthermore, the state asserts that, "because the defendant was represented by counsel, presented multiple witnesses, admitted documentary evidence, cross-examined the state's witnesses, made legal argument before the court imposed its sentence, and personally addressed the court before sentencing . . . he exercised the minimum due process rights afforded to probationers at revocation hearings and cannot demonstrate likely harm." The state's list concerns separate rights and noticeably excludes the "opportunity to be heard in person"; *Morrissey* v. *Brewer*, supra, 408 U.S. 489; which, as discussed, is "[e]ven more fundamental to a personal defense than the right of self-representation . . . ." *Rock* v. *Arkansas*, supra, 483 U.S. 52; see id. ("the most important witness for the defense in many criminal cases is the defendant himself"). Additionally, "allocutions are not testimony. Testimony is affirmative evidence, not just damage control. And testimony happens early enough to shape the narrative." *United States* v. *Barksdale*, supra, 98 F.4th 89–90.

Accordingly, we conclude that the defendant is entitled to a new violation of probation hearing.[25]

The judgment is reversed and the case is remanded for a new violation of probation hearing.

In this opinion the other judges concurred.

---

[25]In light of this determination, we need not address the defendant's alternative claim under the plain error doctrine.